MARTIN DRIVE CORPORATION ET AL. *v.* JAMES
THORSEN ET AL.
(AC 20056)

Landau, Flynn and Daly, Js.

Argued April 3—officially released November 13, 2001

*Robert A. Fuller,* for the appellants (named defendant et al.).

*John Jowdy,* for the appellee (named plaintiff).

FLYNN, J. The defendants James Thorsen and Maureen Thorsen[1] appeal from that part of the judgment, rendered by the trial court, granting the plaintiff Martin Drive Corporation[2] a permanent injunction prohibiting the defendants from using a certain right-of-way over Martin Drive for the benefit of a small part of their parcel of land. On appeal, the defendants claim that the trial court improperly determined (1) that they do not have an express or implied easement over Martin Drive and (2) that the use of the easement to benefit the small part of their land about which there is an easement dispute constituted an overburdening. We conclude that because the defendants' predecessors in title, Francis Martin and Philip Martin, contemplated that Philip Martin would have a right of use over Martin Drive for the benefit of the disputed part, the effect of Francis Martin's conveyance to Philip Martin, the plaintiff's immediate grantor, was to confer a right of use for the benefit of the parcel. We, therefore, reverse the judgment on the complaint and the counterclaim insofar as the trial court found for the plaintiffs and remand this case to the trial court with direction to render judgment for the defendants on both the complaint and the counterclaim.

The present dispute arose after the defendants obtained approval from the town to subdivide their 6.715 acre property, which originally had consisted of three separate lots, into two lots bordering Martin Drive. The plaintiff owns a fifty foot wide parcel of property

---

[1] The other defendant in this action is Cioffoletti Construction Company, Inc. (Cioffoletti). Because Cioffoletti is not involved in this appeal, we refer in this opinion to the defendants James Thorsen and Maureen Thorsen as the defendants.

[2] The plaintiffs Craig Foster and Julie Foster are not involved in this appeal. We refer in this opinion to the plaintiff Martin Drive Corporation as the plaintiff.

on which Martin Drive, a private improved road, is located. The plaintiff contends that the 2.234 acre building lot that the defendants created by merging a portion of a parcel bordering Martin Drive with a parcel that did not border Martin Drive may not be accessed via that road.

The following facts and procedural history are relevant to our disposition of this appeal. The parties do not dispute that the defendants obtained title by virtue of a warranty deed from Philip Martin and June Martin dated November 25, 1991. That deed granted express easements to the defendants, including an easement over parcel M, otherwise known as Martin Drive. The deed contained no metes and bounds descriptions, but instead referred to a lot number on map number 6077, a map of record, to describe the land to be conveyed in fee simple. The deed referred to map number 5483 and map number 6077 to describe the right-of-way over Martin Drive. Specifically, the deed conveyed a 6.715 acre plot, "TOGETHER WITH the right in common with others to whom like rights have heretofore or may hereafter be granted to the use of Parcel 'M' as shown on Map Number 5483 for egress and ingress from the highway known as North Salem Road and shown as 'Right of way' on Map Number 6077."

Because the parties' disagreement centers on whether Philip Martin and June Martin had the right to convey to the defendants a right of access to all of the 6.715 acre parcel, we examine the title that Philip Martin had received from his father, Francis Martin, to determine if, in fact, he and his wife, June Martin, had the legal right to convey to the defendants the right to use Martin Drive for the benefit of the entire parcel conveyed.

The following facts relate to the chain of title of the various parcels at issue in this action. Prior to 1963,

Francis Martin possessed real property in the town of Ridgefield, including several parcels of land now owned by the defendants, together with parcel M, which is now owned by the plaintiff. Parcel M is the property on which Martin Drive is located. Francis Martin also owned several other parcels of land not subject to this appeal. In 1963, Francis Martin transferred parcel F to his son, Philip Martin, by warranty deed (1963 deed). Parcel F consisted of 3.733 acres.[3] The 1963 deed included an express appurtenant easement over Martin Drive, which bordered the northwest boundary of parcel F. In 1975, Francis Martin transferred parcel H to Philip Martin and June Martin by warranty deed (1975 deed). Parcel H consisted of 2.009 acres that abutted parcel F. The 1975 deed included an express appurtenant easement over Martin Drive, which borders the northwest boundary of parcel H. Thereafter, in 1978, Francis Martin transferred parcel C to Philip Martin by warranty deed (1978 deed). Parcel C consisted of 1.437 acres that also abutted parcel F. The 1978 deed included an express appurtenant easement over Rock Court, which borders the northeast boundary of parcel C, and over Rock Road. Parcel C did not border Martin Drive. The 1978 deed did not expressly provide a right to pass over Martin Drive. That deed did provide, however, that parcel C was conveyed according to a map numbered 6077. The map stated: "Parcel 'C'—1.437 Ac. to be conveyed to Lot '2.' " Lot 2 on map number 6077 was comprised of lots F, H and C.

Francis Martin retained ownership of Martin Drive following the transfer of those three parcels to his son. In 1984, after Francis Martin's death, Philip Martin and Union Trust Company, the executors of the estate of

---

[3] We note that sometime between 1963, the year in which Francis Martin conveyed parcel F to his son, and 1978, when he conveyed parcel C to his son, parcel F was reduced from 3.733 acres to 3.269 acres.

Francis Martin, transferred the ownership of Martin Drive by warranty deed to the plaintiff.

In 1991, Philip Martin and June Martin conveyed parcels F, H and C, which were described together as total lot 2, to the defendants by virtue of a warranty deed (1991 deed). According to the 1991 deed and the referenced map description, the total lot, consisting of 6.715 acres, was comprised of three contiguous parcels of land: parcel F totaling 3.269 acres; parcel H totaling 2.009 acres; and parcel C totaling 1.437 acres. The 1991 deed purportedly granted the defendants an appurtenant easement over Martin Drive, the rights-of-way known as Rock Court and Rock Road, and a third right-of-way not at issue in this action.[4]

The defendants thereafter reconfigured the three separate parcels that had comprised total lot 2. With town approval, total lot 2 ultimately was subdivided into "revised parcel C" totaling 2.234 acres and "revised lot 2" totaling 4.482 acres. Revised parcel C comprises all of parcel C and 0.797 acres of parcel F. Revised parcel C borders Martin Drive and Rock Court. It is revised parcel C that is at the center of the present dispute.

Following the subdivision, the defendants sought to sell revised parcel C. Upon learning of the parties' disputes, however, the proposed purchaser declined to

---

[4] The 1991 deed provided: "TOGETHER WITH the right in common with others to whom like rights have heretofore or may hereafter be granted to the use of Parcel 'M' as shown on Map Number 5483 for egress and ingress from the highway known as North Salem Road and shown as 'Right of Way' on Map Number 6077.

"TOGETHER WITH the use in common with others to whom like rights have heretofore or may hereafter be granted to the right of way extending Westerly and thence Northerly from Parcel 'M' and across Parcel 'G,' 'A' and 'C' as shown on said Map Number 5483.

"TOGETHER WITH the right to the use of Rock Court and Rock Road in common with others to whom like rights have heretofore or may hereafter be transferred, to pass and repass over and across roads as shown on Map Number 6077."

purchase the parcel. The defendants then initiated an action to quiet title. See *Thorsen* v. *Scott*, Superior Court, judicial District of Danbury, Docket No. 327346. In a separate action, the plaintiff sought, inter alia, temporary and permanent injunctive relief prohibiting the defendants from using Martin Drive to access revised parcel C.[5] See *Martin Drive Corp.* v. *Thorsen*, Superior Court, judicial district of Danbury, Docket No. 327713. The trial court granted the plaintiff a temporary injunction that limited the defendants' usage of Martin Drive to accessing their personal residence located on revised lot 2.

Those actions later were consolidated and jointly tried to the court. On September 9, 1999, the court rendered judgment in favor of the defendants on all counts of the amended revised complaint except count five in which the plaintiff sought permanent injunctive relief prohibiting the defendants from using Martin Drive to access revised parcel C. The court issued a permanent injunction prohibiting the defendants from using Martin Drive for any purpose other than all uses appropriate to ingress and egress to parcels F and H presently owned by the defendants.[6] This appeal followed.

Before turning to the defendants' claims on appeal, we briefly discuss the law of easements as it applies to the present case. An easement is a nonpossessory

---

[5] In the seven count amended revised complaint, the plaintiff also alleged that the defendants negligently and fraudulently misrepresented and fraudulently disclosed certain facts to the town to obtain town approval of the subdivision of total lot 2, and that the defendants trespassed on their lands and committed various violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

[6] The court's reference to parcels F and H parallels the description listed on the map that was referred to in the 1975 deed. Parcel F was later described, however, as lot 2 on the map referred to in the 1978 and 1991 deeds.

interest in the land of another.[7] "[A]n easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement. 1 Restatement (Third), [Property, Servitudes § 1.2 (1), p. 12 (2000)]. Furthermore, [t]he benefit of an easement or profit is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose. Id., § 12, comment (d), pp. 14–15; see also *Russakoff* v. *Scruggs*, 241 Va. 135, 138, 400 S.E.2d 529 (1991) (easements are not ownership interests but rather privileges to use land of another in certain manner for certain purpose)." (Internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 528, 757 A.2d 1103 (2000).

Easements traditionally have been divided into two categories, express and implied, that relate to the means by which the easement is created. An express easement is created by an express grant by deed or other instrument satisfying the statute of frauds. J. Bruce & J. Ely, Jr., The Law of Easements and Licenses in Land (1995) § 3.04, pp. 3-9 through 3-10. An implied easement is implied by law because of necessity, e.g., an otherwise landlocked parcel would result from severance of a part by a common owner. See id., § 4.01 (2), p. 4-4.[8]

---

[7] A parcel of land benefited by an easement is described as the dominant estate. Land subject to an easement is denominated as the servient estate. An easement appurtenant is an easement that runs with the land and, therefore, is created for the benefit of the owner of the dominant estate. J. Bruce & J. Ely, Jr., The Law of Easements and Licenses in Land (1995) § 2.02, p. 2-9; see also *Deregibus* v. *Silberman Furniture Co.*, 121 Conn. 633, 186 A.2d 553 (1936).

[8] Treatises on the subject categorize implied easements into several broad categories. A common element to all of those categories is that at the time of severance the easement was necessary. Where easements are implied from deed descriptions or from references to a plat in a conveyance of a lot in a tract type subdivision development or by virtue of implied dedication to public use of roadways and rights-of-way, the common element is that such easements are necessary for the reasonable enjoyment and use of the

There also is a hybrid form of easement that does not fit neatly into either the express or implied categories. Our Supreme Court has determined in *Carbone* v. *Vigliotti*, 222 Conn. 216, 225, 610 A.2d 565 (1992), and in *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 829–30, 717 A.2d 1232 (1998), that whether an easement of access to a right-of-way attaches to after-acquired property depends on whether the parties at the time of creation of the easement may be found to have contemplated, as a matter of law, that the benefits might accrue to adjacent property that was not formally within the terms of the easement. The genesis of the defendants' claim of right to use Martin Drive for the benefit of the disputed parcel most closely fits the doctrine articulated in *Carbone* and *Abington*. We now turn to the defendants' claims on appeal.

## I

## EXPRESS EASEMENT

The defendants first claim that the 1978 deed granted an express easement over Martin Drive for the benefit of parcel C and that the 1991 deed also conveyed easement rights for total lot 2, including parcel C, and, therefore, such easement rights extend to revised parcel C. We disagree.

Our review of the defendants' first claim is governed by the well established principles governing our construction of conveyances. "In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent

---

benefited parcel of land. See J. Bruce & J. Ely, Jr., supra, § 4.01 (1), p. 4-2. The record here does not support the conclusion that any such necessity created an implied easement.

expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances. . . . Finally, our review of the trial court's construction of the instrument is plenary." (Citations omitted; internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, supra, 254 Conn. 510–11.

We now turn to the merits of the defendants' first claim, namely, that the 1978 deed conveying parcel C and the 1991 deed included express easements over Martin Drive. The 1978 deed conveying parcel C granted "the right to use Rock Court and Rock Road in common with others to whom like rights have heretofore or may hereafter be transferred, to pass and repass over and across said roads as shown on [map number 6077]." Nowhere in the language of the deed did Francis Martin, who owned Martin Drive at the time that he conveyed parcel C to his son, grant the owner of parcel C a right to use Martin Drive. An examination of map number 6077, to which the 1978 deed refers, reveals that parcel C did not border Martin Drive, but rather bordered Rock Court, which ran along the northeast boundary of parcel C. We conclude, therefore, that the 1978 deed did not grant an express easement over Martin Drive for the benefit of parcel C.[9]

## II

## IMPLIED EASEMENT

The defendants next rely on the theory of implied easement to claim access to Martin Drive from revised

---

[9] In part III of this opinion, we address whether the 1991 deed conveying total lot 2 to the defendants granted an express easement over Martin Drive for the benefit of the lot, including parcel C.

parcel C.[10] We conclude that the defendants do not have an implied easement over Martin Drive in favor of parcel C.

"An implied easement is typically found when land in one ownership is divided into separately owned parts by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property." (Internal quotation marks omitted.) *Covey* v. *Comen*, 46 Conn. App. 46, 50 n.6, 698 A.2d 343 (1997). We examine two principal factors in determining whether an easement by implication has arisen. *Perkins* v. *Fasig*, 57 Conn. App. 71, 78, 747 A.2d 54, cert. denied, 253 Conn. 925, 754 A.2d 797 (2000). First, we look to the intention of the parties and, second, we consider "whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." (Internal quotation marks omitted.) Id.

In the present case, we already have determined that Francis Martin's intention was to grant Philip Martin, as title owner of parcel C, the use of Rock Court and Rock Road for ingress to and egress from parcel C. Therefore, our inquiry is limited to whether an easement over Martin Drive is reasonably necessary for the use and normal enjoyment of parcel C.

We conclude that an implied easement is not necessary for the use and normal enjoyment of parcel C. As we discussed previously, the defendants have an easement over Rock Court and Rock Road over which

---

[10] The defendants principally rely on *Perkins* v. *Fasig*, 57 Conn. App. 71, 747 A.2d 54, cert. denied, 253 Conn. 925, 754 A.2d 797 (2000). Their reliance, however, is misplaced. In *Perkins*, this court concluded that the defendants had an easement by implication because their parcel of land was landlocked. Id., 78. As discussed in part I of this opinion, parcel C was not a landlocked parcel of land, but rather had access via Rock Court and Rock Road, two unimproved roads abutting parcel C.

they may gain access to parcel C. Parcel C is not land-locked, although it does border unimproved roads.

## III

## RIGHT OF USE

The defendants next argue that in the absence of an express or implied easement, revised parcel C has access over Martin Drive because parcel F had an express easement to the road. The defendants conclude that the usage of Martin Drive for the benefit of revised parcel C, which includes the former parcel C, therefore, does not constitute an overburdening of the easement. We conclude that, under the circumstances of this case, the predecessor in title, Francis Martin, and his grantee, Philip Martin, contemplated that the benefits of the Martin Drive easement would accrue to parcel C. See *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 829–30.

The trial court found that the use of parcel C, with its contribution of 64 percent of revised parcel C's area, will produce a burden to Martin Drive of two residences, instead of the present one residence. In so deciding, the court noted that this case is not a case of a subdivision of a dominant estate, but rather the merging of a fraction of a dominant estate with an additional parcel of land to create an additional building lot. The court concluded that "[i]t is the use of parcel C that converts [the defendants'] property from a burden of a one family residence to the burden of two one family residences, thus creating a potential for a significant change in the use of the easement from that contemplated from the use of the dominant estate created by the [1963 and 1975 deeds]."[11]

[11] The court further concluded that "[t]he failure of [Francis Martin] to grant and the failure of [Philip Martin] to seek an appurtenant easement to Martin Drive in the 1978 deed to Parcel C adds further weight to the claim that Parcel C was contemplated to be an overburden to Martin Drive easement."

"The general modern rule regarding the interplay between an easement appurtenant and a nondominant estate is that an [a]ppurtenant easement cannot be used to serve [a] nondominant estate. 1 Restatement (Third), Property, Servitudes § 4.11, comment (b), p. 620 (2000). . . . The purpose undergirding the rule is that the owner of an easement appurtenant may not materially increase the burden of an easement upon the servient estate or impose a new or additional burden. The doctrine was intended to protect the servient estate from the use of an easement in a manner or to an extent not within the reasonable expectations of the parties at the time of its creation." (Citation omitted; internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, supra, 254 Conn. 513.

In *Carbone* v. *Vigliotti*, supra, 222 Conn. 225, our Supreme Court "carved out an exception [to that rule] where the dominant estate was simply being enlarged by the subsequent acquisition of an adjoining parcel by the owner of the dominant estate." *Il Giardino, LLC* v. *Belle Haven Land Co.*, supra, 254 Conn. 513. Eschewing a bright line rule, the court in *Carbone* held that "when no significant change has occurred in the use of the easement from that contemplated when it was created . . . the mere addition of other land to the dominant estate does not constitute an overburden or misuse of the easement." *Carbone* v. *Vigliotti*, supra, 225.

In *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 829–30, the court clarified its prior holding in *Carbone*. There, the court explained that it "did not hold that an easement of access attaches automatically to after-acquired property. . . . [W]e also recognized, however, that, in some circumstances, the parties at the time of the creation of an easement may be found to have contemplated, as a matter of law, that its benefits might accrue to adjacent property that was not formally

within the terms of the easement. . . . To determine that intent . . . a court reasonably may take into account the proposed use and the likely development of the dominant estate." (Citations omitted.) Id. Our Supreme Court reaffirmed these principles in *Abington Ltd. Partnership* v. *Heublein*, 257 Conn. 570, 579–81, 778 A.2d 885 (2001).

In the present case, the defendants subdivided total lot 2, which comprised parcels F, H and C, into two distinct parcels, and 2.472 acres of parcel F were merged with parcel H to become revised lot 2. The remaining 0.797 acres of parcel F were merged with parcel C to become revised parcel C. "It is a well established principle that where an easement is appurtenant to any part of a dominant estate, and the estate is subsequently divided into parcels, each parcel may use the easement as long as the easement is applicable to the new parcel, and provided that the easement can be used by the parcels without additional burden to the servient estate." *Sliefel* v. *Lindemann*, 33 Conn. App. 799, 813, 638 A.2d 642, cert. denied, 229 Conn. 914, 642 A.2d 1211 (1994).

Therefore, the question for the trial court was whether the merging of the subdivided portion of parcel F, which had an easement appurtenant over Martin Drive, and parcel C, which did not have such an easement, constituted an overburdening of the Martin Drive easement. The trial court concluded that it did. To determine whether the trial court's conclusion was correct, we first look to the intent of the original grantor when the easement was created. See *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 830.

Francis Martin owned Martin Drive, the servient estate, when he transferred portions of his dominant estate known as parcels F, H and C to Philip Martin. He remained in possession of Martin Drive until his

death in 1984, when Philip Martin and Union Trust Company, the executors of Francis Martin's estate, transferred ownership of Martin Drive to the plaintiff. The 1978 deed transferred parcel C to Philip Martin according to a map numbered 6077 by the town clerk. That map clearly denoted Francis Martin's intention to add parcel C to the two parcels he previously had conveyed to his son. The map denoted parcel F as lot 2 and collectively identified parcels F, H and C as "total lot 2." More importantly, however, is the identification that "[p]arcel 'C'—1.437 Ac. [is] to be conveyed to lot '2'." Under those circumstances, we logically infer from the deeds and the map that Francis Martin owned both the dominant and servient estates and that his son would own all of parcels F, H and C. Thus, Francis Martin contemplated that Philip Martin, as the owner of those parcels, would access parcel C from Martin Drive. To hold otherwise would result in concluding that Francis Martin intended that his son, Philip Martin, could not walk from the part of lot 2 that was derived from parcel C to Martin Drive, notwithstanding the remaining portion of lot 2 had an express easement over Martin Drive, but instead would have to take a convoluted loop using both unimproved and improved roads to reach the front of his property bordering Martin Drive. This is not likely.

Our conclusion is further supported by the evidence that Rock Court and Rock Road were unimproved roads, while Martin Drive was improved and the fact that Francis Martin remained in possession of the right-of-way. Assuming that Francis Martin contemplated that Philip Martin would use Martin Drive to access parcel C, which was contiguous to parcel F, we can see no need for Philip Martin to secure an express easement for the benefit of parcel C, as the trial court reasoned he failed to do.[12] We conclude, therefore, that

[12] The trial court stated in its memorandum of decision: "[T]he failure of [Philip Martin] to seek an appurtenant easement to Martin Drive in the

this case presents one of those circumstances in which the parties at the time of the creation of the easement over Martin Drive contemplated, as a matter of law, that its benefits would accrue to parcel C.

The defendants further argue that several material facts indicate that Francis Martin intended to grant Philip Martin an easement over Martin Drive for the benefit of parcel C. Specifically, the defendants note: (1) the father and son relationship between Francis Martin and Philip Martin; (2) the 1978 deed referred to map number 6077, which listed not only Rock Court and Rock Road but also Martin Drive; (3) Philip Martin owned the two adjacent parcels F and H, which already had easement rights over Martin Drive; (4) map number 6077 identified parcels C, F and H as comprising total lot 2 of 6.715 acres; (5) parcel C of 1.437 acres does not constitute a building lot regardless of frontage on Rock Court because the property is situated in a two acre residential zone; (6) Rock Court is an unimproved road with topography that makes it difficult, if not impossible, to access parcel C; and (7) all of the conveyances from Francis Martin gave easement rights across Martin Drive. We conclude that the father-son relationship between Francis Martin and Philip Martin, coupled with the facts that Francis Martin already had conveyed to Philip Martin adjoining parcels F and H and parcel C did not constitute a building lot, further support our conclusion that the Martins contemplated that the easement over Martin Drive would benefit parcel C.

We next consider whether the trial court properly concluded that the use of Martin Drive for the benefit of revised parcel C would result in a material increase in the use of the servient property. The court concluded that "the use of Parcel C . . . converts the [defen-

1978 deed to parcel C adds further weight to the claim that parcel C was contemplated to be an overburden to the Martin Drive easement."

dants'] property from a burden of a one family residence to the burden of two one family residences, thus creating a potential for a significant change in the use of the easement from that contemplated from the use of the dominant estate created by the [1963 and 1975 deeds]." We disagree.

The record reveals that at the time that Francis Martin conveyed parcels F and C, respectively, to Philip Martin, the properties were and remain located in a two acre residential zone. Also, as we already determined, upon conveying parcel C to his son, Francis Martin's intent was to add the parcel to parcel F, which he previously had conveyed. Those two lots together equaled 4.706 acres. Merged with parcel H to comprise total lot 2, the entire property was 6.715 acres. The record also reveals that the 1978 deed did not include any restrictions prohibiting Philip Martin or subsequent titleholders from further subdividing the total lot 2. In light of the fact that the property was and is located in a two acre residential zone, we conclude that, on the basis of the evidence in the record, the addition of a second home on the property, as subdivided, would not constitute an overburdening of Martin Drive. In so concluding, we are mindful that "[t]he manner, frequency, and intensity of the use [of an easement] may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefitted by the servitude." 1 Restatement (Third), Property, Servitudes § 4.10, p. 592 (2000). We, therefore, reverse the trial court's ruling to the contrary and conclude that the defendants, as successors of the original grantee, Philip Martin, have the right to use Martin Drive for the benefit of all of revised parcel C.

The judgment for the plaintiffs on the complaint and the counterclaim is reversed and the case is remanded

with direction to render judgment for the defendants on the complaint and the counterclaim.

In this opinion the other judges concurred.