EDWARD F. KOSNIK ET AL. *v.* GERALD C. BARTON ET AL.
(AC 26219)

McLachlan, Harper, and Peters, Js.

245

Argued November 17, 2005—officially released January 24, 2006

*Everett E. Newton*, for the appellants (defendants).

*Joyce H. Young*, with whom, on the brief, was *Kent C. Kolbig*, for the appellees (plaintiffs).

*Opinion*

PETERS, J. This case involves a dispute between two rear lot landowners in a subdivision about the extent to which an accessway built on property owned by one of them may be used by the other. At issue are the terms of the deed of the conveyance to the first grantee and the provisions of the town of Greenwich building zone regulations that govern required accessways for rear lots that do not front on existing town roads. The trial court agreed with the plaintiff landowners that they were not required to share their accessway with the defendant landowners except for the short distance where their accessways adjoin each other. Accordingly, the court granted the plaintiffs' request for injunctive

relief pursuant to General Statutes § 47-31.[1] The defendants have appealed. We affirm the judgment of the trial court.

The plaintiffs, Edward F. Kosnik and Kay A. Kosnik, filed a complaint against the defendants, Gerald C. Barton and Dimitra Barton, in which they sought to enjoin the defendants from constructing a second driveway with egress or ingress to the plaintiff's accessway and from otherwise trespassing on the plaintiffs' property and to quiet title to this accessway. The defendants denied the allegations in the plaintiffs' complaint and filed a counterclaim for a declaratory judgment and an injunction permitting them to use the disputed accessway.[2] After an evidentiary hearing, the trial court granted an injunction in favor of the plaintiffs. The defendants have appealed.

The rights of the parties are governed by the terms of their respective deeds and the terms of the Greenwich building zone regulations to which the deeds refer. The trial court made the following undisputed findings of fact. On August 10, 1989, the plaintiffs purchased lot 7, approximately 2.9 acres in size, from a developer, Salellen Holding Company (developer).[3] Their lot is one

---

[1] General Statutes § 47-31 provides in relevant part: "(a) An action may be brought by any person claiming title to, or any interest in, real . . . property, against any person who may claim to own the property, or any part of it, or to have any estate in it . . . . (f) The court shall hear the several claims . . . and render judgment determining the questions and disputes and quieting and settling the title to the property."

[2] The defendants also filed special defenses in which they claimed that the plaintiffs' action was barred by laches, waiver, estoppel, unjust enrichment and unclean hands. The trial court did not address the merits of these defenses.

[3] A subdivision map entitled "Property of Salellen Holding Co., Greenwich, Conn.," was recorded in the land records on August 19, 1988, as map No. 6451. This map indicates that the lot where the plaintiffs' house is built consists of approximately 2.3 acres and that the accessway, held in fee simple by the plaintiffs, is approximately 0.602 acres in area and about 1100 feet in length.

Technically, ownership of the plaintiffs' lot was initially transferred by quitclaim deed by Salellen Holding Company to Meadow Road Partners by

of twelve lots in the subdivision, which is located off Ashton Drive, a private road, in Greenwich. Unlike the owners of some of the other lots, the plaintiffs do not have street frontage on Ashton Drive or on any other street. Greenwich Building Zone Regulations § 6-131[4] permits buildings on rear lots if the accessway to the street is held in the same fee ownership as the main portion of the lot. Accordingly, the plaintiffs' property consists of the lot where their house has been built as well as their twenty foot wide accessway to Ashton Drive.

On February 21, 1992, the defendants bought lot 10 in the same subdivision. Like lot 7, lot 10 is a rear lot that is buildable because it too has a twenty foot wide accessway to Ashton Drive that the defendants hold in fee simple ownership. Although the development documents give the owners of lots 8 and 9 an express right to use the lot 7 accessway for ingress and egress, there is no such express provision for the owners of lot 10.

For approximately 100 feet, the lot 7 accessway and the lot 10 accessway adjoin as they reach Ashton Drive. As authorized by § 6-131 (b),[5] the parties share a single

a deed dated August 10, 1989. Meadow Road Partners thereafter transferred the lot to the plaintiffs by a quitclaim deed dated August 15, 1989.

[4] Section 6-131 (a) of the Greenwich Building Zone Regulations provides in relevant part: "A rear lot not fronting on a street . . . may be improved . . . provided that: 1. Such lot has access to a street by means of an unobstructed access way held in the same fee ownership as the rear lot; 2. That such access way is at least 20 feet wide; 3. Within the lines of such access way there shall be constructed a gravelled or other paved way at least 12 feet wide . . . 5. Such accessway shall not be included for the purpose of meeting the area required . . . of the rear lot; 6. Such accessway does not adjoin any other accessway to a rear lot."

[5] Section 6-131 (b) of the Greenwich Building Zone Regulations provides in relevant part: "In the case of two rear lots not fronting on a street . . . [such] lots may be improved . . . provided that: 1. Each such lot have access to a street by means of adjoining 20 ft. wide unobstructed access ways held in the same fee simple ownership as the rear lot; 2. Within the lines of such combined access ways there shall be constructed a single gravelled or other paved way of at least 16 feet wide . . . 6. Such accessway does not adjoin any other accessway to a rear lot . . . ."

paved way, sixteen feet wide, within their combined accessways. Some of this paved accessway is on the property of the defendants. After this shared accessway, the adjoining accessways separate.

As the trial court stated, "[t]he issue in this case is the defendants' desire or plan to have a second means of access to Ashton Drive by constructing a driveway out onto the plaintiffs' accessway and thence to that street.[6] The plaintiffs resist the defendants' proposal and they seek a permanent injunction against the defendants' use of their accessway. They also seek to quiet title to the accessway as authorized by General Statutes § 47-31."

In their appeal from the judgment of the trial court granting injunctive relief to the plaintiffs, the defendants have raised two issues. They maintain that (1) the plaintiffs are trespassing on the defendants' property and (2) the deed from the developer to the plaintiffs reserved to subsequent purchasers, such as the defendants, the right to use the plaintiffs' accessway. We are not persuaded.

I

TRESPASS

The defendants' first claim on appeal is that the judgment must be reversed because the trial court granted the plaintiffs' request for an injunction on the basis of the court's mistaken finding that "the plaintiffs and the defendants share a common sixteen foot wide driveway running south from Ashton Drive for 100 feet, until the two driveways split." According to the defendants, this

---

[6] The trial court found that "the defendants have repeatedly advised the plaintiffs of their intention and plans to build a driveway and entrance to the plaintiffs' accessway for ingress and egress to Ashton Drive to the north, and the plaintiffs have just as consistently told the defendants that they have no such right. The plaintiffs also contend that the defendants and/or their agents, or employees park their vehicles on the lot seven accessway."

finding was clearly erroneous because, at trial, there was no evidence that the plaintiffs had any right-of-way onto any part of the defendants' property. Without such a right-of-way, the defendants maintain, the plaintiffs were trespassers who were not entitled to the relief awarded to them by the court.

In the defendants' view of the record, the plaintiffs cannot legally access Ashton Drive by their paved driveway because the defendants have an unconditional fee interest in part of this shared accessway. It follows, according to the defendants, that the plaintiffs are obligated, as a matter of law, to relocate the sixteen foot paved driveway within their own twenty foot wide strip of land. Because a relocated paved driveway on the plaintiffs' property does not provide access to Ashton Drive for the defendants, the defendants maintain that, of necessity, they must be allowed to access the plaintiffs' accessway wherever it is convenient for the defendants to do so.

At trial, the defendants did not raise a claim that the plaintiffs were trespassers until, advised by new counsel, they filed a motion for reargument after the court had issued its memorandum of decision in favor of the plaintiffs following a trial to the court.[7] Although the plaintiffs acknowledge that part of the existing shared accessway is located on the defendants' property, they objected to the defendants' motion on the ground that the trespass theory previously had not been pleaded, tried, argued or briefed. The court sustained the plaintiffs' objections without opinion. The defen-

---

[7] The defendants posttrial reply brief did not raise this issue. Although the defendants filed special defenses in which they alleged that the plaintiffs were not entitled to equitable injunctive relief because of laches, waiver, estoppel, unjust enrichment or unclean hands, at trial they did not expressly pursue any of these defenses. In their motion for reargument, they asserted that their new claim could be heard without new testimony.

dants did not ask the court to articulate the grounds for its decision. See Practice Book § 66-5.

On this state of the record, we decline to address the merits of the defendants' trespass claim. "Only in [the] most exceptional circumstances can and will [an appellate] court consider a claim, constitutional or otherwise, that has not been raised *and decided* in the trial court." (Emphasis added; internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 498, 863 A.2d 680 (2005); see also Practice Book § 60-5. We do not know why the trial court ruled as it did. We note that the defendants have not sought plain error review.

II

EASEMENT

The trial court found that the plaintiffs' deed provided, in pertinent part, that their lot, denoted as lot 7, was conveyed to them subject to "the notes, easements and other conditions set forth in map no. 6451, and a reservation by the grantor to grant easements to owners of other lots on map no. 6451 to conform to the requirements of the subdivision plan as set forth in the notes, easements and conditions set forth on map no. 6451." The trial court concluded that nothing in the many notes, easements and conditions on the subdivision map indicated that the grantor reserved the right to grant or convey an easement to the defendants to enter upon and to use the accessway owned by the plaintiffs in fee simple. The defendants challenge the validity of this conclusion.

The defendants argue that the trial court misread the terms of the easement by failing to take into account the circumstances surrounding the conveyance of lot 7 to the plaintiffs. At that time, none of the other houses proposed for lots 1 through 12 had been built, except for a preexisting house on lot 5. The defendants main-

tain that the parties must be understood to have intended the conveyance of lot 7 to accommodate the diversity of needs for future development as identified in the subdivision map. More generally, they cite the public policy enunciated in 1 Restatement (Third), Property, Servitudes § 4.10, comment (b) (2000), which provides in relevant part: "In resolving conflicts among the parties to servitudes, the public policy favoring socially productive use of land generally leads to striking a balance that maximizes the aggregate utility of the servitude beneficiary and the servient estate. Socially productive uses of land include maintaining stable neighborhoods [and] . . . development for residential . . . uses."

Applying these principles of broad construction to the circumstances of this case, the defendants argue that restricting the defendants' access to lot 10 to their existing accessway (1) misconstrues a reservation in the plaintiffs' deed and (2) operates as an improper restraint on alienation because it limits the utility and marketability of the defendants' property. Their arguments raise issues of law that are entitled to plenary review by this court. *Torgerson* v. *Sarah Tuxis Residential Services, Inc.*, 81 Conn. App. 435, 439, 840 A.2d 66, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004). We are not persuaded.

It is useful to start our analysis by setting out what is *not* at issue. The plaintiffs do not argue, and the law would not permit them to argue, that the defendants are barred from enforcing any easements to which the plaintiffs agreed because the defendants acquired their property subsequent to the plaintiffs' purchase of their lot. Our case law recognizes that the benefits of an easement may accrue to nearby after acquired property "that was not formally within the terms of the easement." *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 830, 717 A.2d 1232 (1998), on appeal after

remand, 257 Conn. 570, 778 A.2d 885 (2001); *Carbone* v. *Vigliotti*, 222 Conn. 216, 610 A.2d 565 (1992); see also 1 Restatement (Third), Property, Servitudes § 4.10 (2000). Accordingly, the court found that the conveyance from the developer to the plaintiffs expressly reserved to the grantor the right "to grant easements *to owners of other lots* on map no. 6451 to conform to the requirements of the subdivision plan as set forth in the notes, easements and conditions set forth on map no. 6451." (Emphasis added.)

Similarly, the defendants no longer argue, as they did in their principal appellate brief, that their own deed from the developer conferred upon them an easement to use the plaintiffs' accessway. The deed conveyed to them a fee simple interest in lot 10 "TOGETHER WITH the right . . . to use the existing driveway located within the accessways to Lot No. 7 and Lot No. 10, which accessways are as shown on said Map. No. 6451 for purpose of ingress and egress to the said premises." In their original brief, they opined that this provision gave them the right to use the plaintiffs' accessway that "will follow the paved way when it is moved from the [defendants'] property to the [plaintiffs' property]." Recognizing the persuasiveness of the plaintiffs' citation of case law in support of the accepted principle that "a property owner may not convey a property interest greater than what he owns"; *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 523, 757 A.2d 1103 (2000); the defendants now acknowledge that, as the trial court held,[8] the dispositive interpretative issue in

---

[8] On this issue, the trial court observed: "The grantor, the developer, did not reserve in its deed to the plaintiffs the right to grant an easement to the owners of lot 10 to use the accessway in question. As indicated previously, the developer could not grant such an easement for the benefit of lot 10 because it would mean two rear lots would be sharing one twenty foot wide accessway. That is permitted only when the two accessways are 'adjoining.' The defendants are attempting to enter the lot 7 accessway where the two accessways are not adjoining. In effect, the developer purported to grant permission for lot 10 to use lot 7's accessway, and the defendants now claim that right at the same time the approved subdivision map indicates

this appeal is the proper construction of the reservation of rights in the *plaintiffs'* deed.

The trial court's opinion considered, in depth, the meaning of the phrase "the notes, easements and conditions on Map No. 6451." It held that, "[a]lthough there are many notes, easements and conditions on that subdivision map, there is nothing to indicate that the grantor reserved the right to grant or convey an easement to the owners of [the defendants' lot] to enter upon and use the accessway owned by the plaintiffs in fee simple. To the contrary, note ten on the subdivision map states that lots 8 and 9 'shall use the accessway of lot 7 [the plaintiffs' lot] for ingress and egress. Indian Spring Road shall not be used for access to either lot.' Lot 10 [the defendants' lot] is not included in that note. It is also noteworthy that there is a reference to lots 7 and 10 in note six that both 'are subject to sec. 6-131 of the Building Zone Regulations.' This note is a clear indication that both lots are rear lots and are buildable only because each has a separate twenty foot wide accessway held in the same ownership as the main part of the lot. As indicated previously, the two accessways come together for the last 100 feet before reaching Ashton Drive and hence both the plaintiffs and the defendants can take advantage of § 6-131 (b), which permits two rear lots to exist and use a combined accessway with a single paved way sixteen feet wide. This is only true for the first 100 feet from Ashton Drive. The two accessways are not 'adjoining' at the point

clearly that both lots 7 and 10 are subject to the rear lot provisions of section 6-131 of the regulations. Undoubtedly realizing their problems with section 6-131, the defendants, in their reply brief, state that this section of the regulations simply does not apply to this controversy. Apparently, this means that they do not think that they own a rear lot, but they do. Additionally, this claim runs directly contrary to note six of the approved subdivision map which states that the defendants' lot is indeed 'subject to section 6-131' of the regulations."

where the defendants wish to enter upon the lot 7 accessway.

"Thus, the defendants' argument that, in conveying lot 7 to the plaintiffs, the developer reserved the right to grant an easement to lot 10 to use the lot 7 accessway is not accurate. The reservation was limited or conditioned upon compliance or conformance with the subdivision map and there is nothing on that map authorizing the owners of lot 10 to enter on someone else's property and actually use it for their own purposes."

The court went on to observe that "[i]n listening to the witnesses and in reading the briefs from the defendants, it is obvious that they believe that because the developer said it was all right to use the lot 7 accessway, they can enter upon someone else's land if they prefer to use the other's land instead of their own accessway out to Ashton Drive. This is the reason that they urge the court to take into account the intention of the developer and the 'surrounding circumstances.' See *Kelly* v. *Ivler*, 187 Conn. 31, 39, 450 A.2d 817 (1982). That kind of inquiry is appropriate when one is construing or interpreting an easement. But in this case the defendants do not have an express easement on the plaintiffs' land that requires any interpretation. 'An express easement is created by an express grant by deed or other instrument satisfying the statute of frauds.' *Martin Drive Corp.* v. *Thorsen*, 66 Conn. App. 766, 773, 786 A.2d 484 (2001)."

Addressing another contention by the defendants, the court held that they did not have an implied easement even though their own twenty foot wide accessway cannot support heavy trucks needed to maintain their swimming pool to the rear of their house. It held that "[i]t is not possible to claim an easement of necessity in this case where lot 10 is a rear lot in a subdivision with its own twenty foot wide accessway leading out

to Ashton Drive. The reason lot 10 is buildable in the first place is because it has 'access to a street by means of an unobstructed accessway held in the same fee ownership as the rear lot.' Greenwich Building Zone Regulations § 6-131. Just because the defendants claim they may have some difficulty in maneuvering cars and trucks unless they use the lot 7 accessway does not mean by any stretch of the imagination that they are the beneficiaries of an implied easement."

The defendants maintain, however, that the trial court did not attach sufficient significance to the introductory language of the reservation that it was called upon to interpret. The plaintiffs' deed provides that the convey- ance of lot 7 is "subject to the following. . . 3. Reserva- tion by Grantor *to enter upon the accessway portion* of the premises *to* place utility and sewer lines and *grant easements* for the use thereof either to public utility companies or *to owners of other Lots* shown on said Map No. 6451 in order to conform to the require- ments of the subdivision plan . . . ." (Emphasis added.)

Indisputably, the defendants are "owners of other Lots shown on said Map . . . ." The questions that remain are twofold. First, what is the referent for "the accessway portion of the premises?" Is "the accessway" that part of the plaintiffs' access that adjoins the defen- dants' accessway or does it include the plaintiffs' accessway in its entirety?[9] Second, what is the scope of the reserved power to "grant easements" for the use of subsequent purchasers of the other lots in the development? Is the reserved power limited to ease- ments for utility and sewer lines or does it authorize easements of any kind, including easements of access,

---

[9] Although the trial court did not expressly address these questions, we may reasonably infer from its opinion that it would have answered the first one in favor of the plaintiffs.

so long as the authorized easements do not unreasonably impair the plaintiffs' use of lot 7?

In light of our affirmance of the trial court's consistent interpretation of the reservation as a whole as granting rights to the defendants only with respect to the parties' shared accessway near Ashton Way, we are inclined to doubt that the first question should be answered in favor of the defendants. We need not, however, resolve this issue.

Even if the reservation could be read to grant easements to subsequent purchasers like the defendants over the plaintiffs' accessway in its entirety, the reserved easements are not unlimited in their scope.[10] The right reserved is "to enter upon the accessway . . . to place utility and sewer lines and grant easements for the use thereof either to public utility companies or to owners of other Lots . . . ." In our view, this reservation is an unambiguous grant of authority to create easements "for the use [of the accessway]" in order "to place utility and sewer lines" and nothing else. A broader reading of the easement does not commend itself because it would render the express reference to "public utility companies" mere surplusage. See *Mulla* v. *Maguire*, 65 Conn. App. 525, 533–34, 783 A.2d 93, cert. denied, 258 Conn. 934, 785 A.2d 229 (2001).

The defendants urge us nonetheless to adopt a broad construction of the reservation in the service of the

---

[10] For the sake of completeness, we have decided to address this issue, although it is far from clear that it is properly before us. The trial court did not address it expressly, and no motion for articulation was filed by the defendants. See Practice Book § 66-5. Furthermore, the defendants did not focus their analysis on the introductory language of the reservation until their reply brief. We have repeatedly deplored the use of a reply brief for the discussion of an issue not previously briefed. *State* v. *Marrero*, 59 Conn. App. 189, 194 n.3, 757 A.2d 594, cert. denied, 254 Conn. 934, 761 A.2d 756 (2000). This practice deprives the court of the benefit of a written analysis of the opposing point of view.

principle that restraints on alienation of property are disfavored by the law. This argument is not persuasive. The defendants have cited no case law, and we know of none, that holds that a speculative diminution in value is the functional equivalent of an unreasonable restraint on alienation. Cf. *Olean* v. *Treglia*, 190 Conn. 756, 764–65, 463 A.2d 242 (1983).

In sum, we conclude that the trial court properly interpreted the terms of the conveyances of lot 7 to the plaintiffs and of lot 10 to the defendants. The court took into account the Greenwich Building Zone Regulations that require landlocked building lots to have reasonable access to a shared accessway leading to a public street. In effect, it concluded that the reservation in the plaintiffs' deed allowed the developer to convey to subsequent purchasers like the defendants no greater access rights than those required by the town. We are not persuaded that the demands of public policy require a different interpretation of the reservation.

The judgment is affirmed.

In this opinion the other judges concurred.