VICTOR FROMM *v.* SHERRILL FROMM
(AC 28437)

Gruendel, Beach and Peters, Js.

Argued March 25—officially released June 10, 2008

*Carolyn M. Futtner*, with whom, on the brief, was *Michael J. Auger*, for the appellant (plaintiff).

*Opinion*

GRUENDEL, J. The plaintiff, Victor Fromm, appeals from the judgment of the trial court denying his motion

to preclude receipt of alimony or support by the defendant, Sherrill Fromm. The plaintiff claims that the court improperly concluded that he could not assert the doctrines of laches and equitable estoppel as defenses to a wage withholding order. We reverse the judgment of the trial court.

The record discloses the following undisputed facts. The parties married in 1978. On December 23, 1987, their daughter, Caitlin, was born. Following the subsequent breakdown of their marriage, a judgment of dissolution entered on November 5, 1993. The various orders entered by the court required, inter alia, that (1) the parties shall have joint legal custody of Caitlin with primary physical custody with the defendant, (2) the plaintiff shall pay support for Caitlin in the amount of $164 per week, (3) the plaintiff shall have reasonable rights of visitation including every Wednesday from 5:30 p.m. to 8:30 p.m. and every other weekend from 5 p.m. on Friday to 8 p.m. on Sunday, (4) the plaintiff shall be entitled to reasonable telephone contact with Caitlin, including at least one telephone call per week "and [the] defendant shall not interfere with same" and (5) the plaintiff shall pay the defendant certain alimony. The court further ordered that "[t]he parties shall exchange current addresses and phone numbers at all times. If either party is to move beyond the borders of the state of Connecticut they shall provide [sixty] days advance notice to the other. Neither party shall move until such notice period has expired."[1]

---

[1] The parties subsequently entered into an agreement regarding the judgment of dissolution. By agreement dated November 28, 1994, the parties modified the child support obligation from $164 to $135 per week, effective "when [the] defendant moves out of state." That agreement also provided that the parties "shall divide transportation expenses for the minor [child's] visitation with the plaintiff" and required that "if [Caitlin] visits [the plaintiff] in Connecticut one parent shall accompany [her] on any flight." Notably, the agreement stated that "[e]xcept as modified herein, the original order of [November] 5, 1993, is affirmed."

In the fall of 1994, the defendant moved to Florida without providing any notice to the plaintiff. As he testified: "I went to have my visitation on Wednesday night in October, 1994, and the house that she was living in was vacant. There was no furniture, no nothing. I was stunned. I then drove across town to Colchester to where [the defendant's] mother lived. At her mother's house, there was a moving van, and this house was being emptied. I said, 'where is [the defendant] and my daughter?' and they indicated she is in Florida. I said, 'I want to see them.' [They told me that they] will contact you." The plaintiff called the police, and an officer was dispatched to the residence. Nevertheless, the defendant's parents refused to provide the plaintiff with an address or telephone number.

After months passed without any contact from the defendant, the plaintiff's attorney spoke with the attorney that had represented the defendant in the dissolution proceeding, and a visit in Florida was arranged. The plaintiff traveled to Florida in February, 1995. Upon arriving at the location provided by the attorney, the plaintiff learned that that property was the home of the defendant's mother, who informed the plaintiff that Caitlin and the defendant were not there. Days later, they at last appeared, and the plaintiff spent two days with his daughter.

During his visit, neither the defendant nor her parents provided the plaintiff with her current address or telephone number. The plaintiff returned to Florida approximately three months later in hopes of visiting Caitlin and learning of her whereabouts. As the plaintiff explained, "I just went to the address I had back in February." He briefly spoke with the defendant's mother, repeatedly asking where he could find Caitlin or the defendant. Her mother responded that "she will contact you" and ordered him off her property. The

plaintiff never saw his daughter during that visit. The plaintiff never heard from the defendant.

The plaintiff contacted other family members of the defendant in search of any lead. At one point, he spoke with the defendant's brother, who promised to help the plaintiff. Despite that assurance, he never heard from the defendant's brother again. The plaintiff likewise contacted dozens of the defendant's friends without any success.

On October 4, 1995, the plaintiff filed a motion for modification of custody and visitation, alleging that the defendant had failed to comply with the dissolution orders concerning his visitation and telephone contact with Caitlin. The record indicates that this motion never was acted on by the court. The plaintiff explained his failure to pursue the motion or other legal options as follows: "[A]fter the divorce, I had lost my house, lost my family. I was trying to reorganize my life. I was penniless. I just couldn't mentally go anymore because every time I would try to find her or get her or do it, it was just another roadblock, and I just couldn't go on and on. I just couldn't do it anymore. I would end up in an institution."

In April, 1997, the plaintiff moved from New Britain to West Hartford. He took great pains to assure that no correspondence was lost as a result of that move. As he testified: "I went to the post office, and I filed a change of address or some sort of thing [so] that they would pay special attention, and you have to come back within twelve months; that if there is a letter or any contact, they would forward it again. I did that for three years running." Despite those efforts, no correspondence came. At the October 30, 2006 hearing, the plaintiff testified that the last contact he had with the defendant and Caitlin was during his February, 1995 visit.

On December 23, 2005, Caitlin became eighteen years old. Less than one month later, on January 17, 2006, the defendant filed a petition with the bureau of child support enforcement (bureau) seeking arrearage payments for alimony and child support. The bureau provided notice to the plaintiff of the issuance of a wage withholding order soon thereafter. As the court noted, "[w]hen he received notice from the bureau, the plaintiff had not heard from the defendant in over ten years. He had no address or telephone number for her. The defendant has filed no motion in the Superior Court alleging the plaintiff's wilful failure to pay alimony and child support."

Pursuant to General Statutes § 52-362 (c) (1), the notice from the bureau informed the plaintiff that he could request a hearing before the court to contest the claimed delinquency or request a modification of the support order. Accordingly, on March 7, 2006, the plaintiff filed both a motion to vacate the wage execution and a motion to modify alimony and support. The latter motion contested the claimed delinquency, alleging that "[i]n approximately 1993, the defendant secreted the whereabouts of herself and Caitlin from the plaintiff. The plaintiff only recently learned that the defendant had 'resurfaced' when he was recently served with documentation from support enforcement services. The defendant failed to provide the plaintiff with her address and situation in contravention of the decree of dissolution." He therefore sought either a reduction or elimination of any arrearage on alimony and support due.

By certified letter dated April 27, 2006, counsel for the plaintiff notified the defendant that, pursuant to Practice Book § 13-26, he sought to depose her on May 9, 2006. The defendant signed the certified mail receipt but did not appear for the deposition. Counsel for the plaintiff again contacted the defendant by certified letter dated May 15, 2006, in which he explained that "[a]

deposition was scheduled for May 9, 2006, but you did not appear. I have submitted a new deposition notice. I ask that you contact me to discuss scheduling for any reason this date does not work." Although the defendant again signed the accompanying certified mail receipt, she failed to appear for the May 31, 2006 deposition.

On October 4, 2006, the plaintiff filed a motion to preclude further receipt of alimony or support. It stated: "The [p]laintiff hereby moves that the court enter an order precluding the defendant from receiving or collecting alimony and/or child support based on one or more of the following grounds: 1. The defendant is guilty of laches; 2. The defendant is equitably estopped from pursuing claims of past due support and alimony; [and] 3. The defendant has waived her rights to pursue past due alimony and/or support." The plaintiff subsequently filed an order for hearing and notice, which the court granted. State Marshal Joshua C. Martin left a true and attested copy of the plaintiff's motion to preclude further receipt of alimony or support and order for hearing and notice at the defendant's place of abode on September 28, 2006.

On October 30, 2006, the court held a hearing on the plaintiff's motion to modify alimony and support and his motion to preclude further receipt thereof. The defendant did not appear at that hearing. The court heard testimony from the plaintiff, and the notice from the bureau was introduced into evidence. In its memorandum of decision, the court reasoned: "The defendant has filed no properly docketed motions for contempt or modification in the Superior Court seeking alimony, child support and arrearages thereon. The plaintiff asserts the defenses of laches and equitable estoppel in order to terminate alimony and child support payments. In this case, the moving party may not assert laches and equitable estoppel as affirmative grounds

for a modification. Laches and equitable estoppel are special defenses, not affirmative causes of action."[2] It therefore denied the plaintiff's motion to modify alimony and support and his motion to preclude further receipt thereof. From that judgment, the plaintiff has appealed.[3]

On appeal, the plaintiff contends that the court improperly concluded that he could not assert the doctrines of laches and equitable estoppel as defenses to the wage withholding order. As that issue of first impression presents a question of law, our review is plenary. See *BRJM, LLC* v. *Output Systems, Inc.*, 100 Conn. App. 143, 152, 917 A.2d 605, cert. denied, 282 Conn. 917, 925 A.2d 1099 (2007). Under that standard, "[w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *In re Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001).

The starting point in our analysis is § 52-362 (d), which expressly permits an obligor subject to a wage withholding order to file defenses thereto. Section 52-362 (d) provides in relevant part: "An obligor may claim a defense based upon mistake of fact, may claim an exemption . . . with respect to the withholding order, *or may file by motion a modification or defense to the support order being enforced by the withholding, by delivering a signed claim form, or other written notice*

---

[2] The court made no mention of § 52-362 in its memorandum of decision.

[3] The defendant did not file a brief in this appeal or appear at oral argument. Pursuant to Practice Book § 85-1, this court directed the plaintiff's counsel to notify the office of the attorney general of the pendency of the appeal, as it is responsible for representing the bureau and support enforcement services pursuant to General Statutes §§ 46b-231 (t) and 17b-179. Counsel for the plaintiff subsequently filed a copy of that notice with this court. We note that the office of the attorney general has not moved to intervene in the present appeal.

*or motion*, with the address of the obligor thereon, indicating the nature of the claim or grounds of the motion, to the clerk of the Superior Court or the assistant clerk of the Family Support Magistrate Division . . . ." (Emphasis added.)

In response to the notice of wage withholding provided by the bureau, the plaintiff filed, inter alia, a motion to preclude further receipt of alimony or support. That motion asserted the defenses of laches, equitable estoppel and waiver. Those are well established special defenses; *Cleary* v. *Zoning Board*, 153 Conn. 513, 518, 218 A.2d 523 (1966); that routinely are raised in our courts. See, e.g., *Kosnik* v. *Barton*, 93 Conn. App. 244, 246 n.2, 888 A.2d 1107 (2006); *Traggis* v. *Shawmut Bank Connecticut, N.A.*, 72 Conn. App. 251, 261–64, 805 A.2d 105, cert. denied, 262 Conn. 903, 810 A.2d 270 (2002); *Teris* v. *Shearson Hayden Stone, Inc.*, 5 Conn. App. 691, 695, 501 A.2d 1228 (1985). Our decisional law further indicates that the defenses of laches, equitable estoppel and waiver regularly are raised by parties, such as the plaintiff in the present case, contesting the recoupment of alimony and support arrearages. See *Papcun* v. *Papcun*, 181 Conn. 618, 620–22, 436 A.2d 282 (1980); *Bozzi* v. *Bozzi*, 177 Conn. 232, 239–43, 413 A.2d 834 (1979); *Riscica* v. *Riscica*, 101 Conn. App. 199, 204–208, 921 A.2d 633 (2007); *Kalinowski* v. *Kropelnicki*, 92 Conn. App. 344, 351–54, 885 A.2d 194 (2005); *Sablosky* v. *Sablosky*, 72 Conn. App. 408, 412–15, 805 A.2d 745 (2002); *Burrier* v. *Burrier*, 59 Conn. App. 593, 595–96, 758 A.2d 373 (2000); *Emerick* v. *Emerick*, 28 Conn. App. 794, 802–804, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992); *Brock* v. *Cavanaugh*, 1 Conn. App. 138, 140–42, 468 A.2d 1242 (1984). In light of that precedent and the express mandate of § 52-362 (d), we conclude that the court improperly held that the plaintiff could not assert the doctrines of laches

and equitable estoppel as defenses to the wage withholding order.

That determination does not end our inquiry. The plaintiff maintains that the record discloses that the defendant was guilty of laches. "A conclusion that a party has not been guilty of laches is one of fact for the trier and not one that can be made by [an appellate court], unless the subordinate facts found make such a conclusion inevitable as a matter of law." *Bozzi* v. *Bozzi*, supra, 177 Conn. 240. The subordinate facts found by the trial court indicate to us that, as a matter of law, the doctrine of laches applies in the present case.[4]

"The defense of laches, if proven, bars a [party] from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the [opposing party]. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the [opposing party]." (Internal quotation marks omitted.) *Treglia* v. *Zanesky*, 67 Conn. App. 447, 459, 788 A.2d 1263 (2001), cert. denied, 259 Conn. 926, 793 A.2d 252 (2002). The doctrine "functions in part as a kind of 'flexible' statute of limitations, barring long-delayed claims where no statute of limitations was available for that purpose." 1 D. Dobbs, Law of Remedies (2d Ed. 1993) § 2.4 (4), p.104; see also *Dunham* v. *Dunham*, 204 Conn. 303, 326–27, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). "The mere lapse of time does not constitute laches . . . unless it results in prejudice to the [opposing party] . . . as where, for example, the [opposing party] is led to change his position with respect to the matter in

---

[4] Because we conclude that the subordinate facts found by the court compel the conclusion that, as a matter of law, the defendant is guilty of laches, we need not address the alternate defenses of equitable estoppel and waiver raised by the plaintiff.

question." (Citations omitted; internal quotation marks omitted.) *Emerick* v. *Emerick, supra,* 28 Conn. App. 804.

Here, the court found that more than a decade passed without the defendant making any contact whatsoever with the plaintiff. The court also found that at no time did the defendant file any "motion in the Superior Court alleging the plaintiff's wilful failure to pay alimony and child support." Significantly, the court found that, despite his efforts, the plaintiff could not obtain either an address or telephone number for the defendant. In that vein, the court found that "the defendant's mother refused to disclose the defendant's address, and the defendant's brother would not provide it to the plaintiff. The plaintiff contacted dozens of [the defendant's] friends to determine the defendant's permanent address . . . but none were willing or able to help him." Those findings are amply supported by the record, which demonstrates a concerted effort on the part of the defendant to make any contact by the plaintiff with either herself or Caitlin impossible. From those findings, we conclude that the defendant's delay in filing her claim was both inexcusable and prejudicial to the plaintiff.

In so concluding, we are mindful that the judgment of dissolution ordered the defendant to provide the plaintiff with her current address and telephone number "at all times." Year after year, her failure to comply with that order rendered the plaintiff unable to make alimony and support payments. The defendant has offered no explanation for her refusal to comply with that critical court order, as she failed to appear for two depositions, the hearing before the trial court and oral argument before this court.

The present case is distinguishable from *Bozzi* v. *Bozzi, supra,* 177 Conn. 232. In *Bozzi,* the plaintiff mother, following her divorce from the defendant

father, moved to the Netherlands with their two children without informing him or the trial court. Eight years later, she sought to have the defendant found in contempt for his failure to comply with the support order entered at the time of their divorce. In rejecting his defense of laches, the Supreme Court stated that "the sole prejudice claimed by the defendant was that he had been deprived of the love and companionship of his children for eight years and that he and his children were entitled to each other's love and companionship." Id., 240. The Supreme Court noted the trial court's finding that "the very last communication between the parties indicated that the defendant would meet his obligation by sending money or by establishing a trust fund for the children and that he would see to their education, none of which was done" and emphasized that "the lack of any communication between the parties for about eight years . . . might have been significant in supporting a claim of laches if there were any evidence that the defendant had changed his position in reliance upon an abandonment by the plaintiff of her claim against him." Id. Unlike *Bozzi*, the claimed prejudice in the present case is the fact that the defendant deliberately made it impossible for the plaintiff to comply with his alimony and support obligations. She also made no "motion in the Superior Court alleging the plaintiff's wilful failure to pay alimony and child support." The record supports the plaintiff's contention that he changed his position regarding his obligations as a result of her conduct.

Likewise, the present case is patently distinguishable from *Brock* v. *Cavanaugh*, supra, 1 Conn. App. 138, in which the defendant father pleaded laches as a defense to his failure to make support payments over a period of six years. The defendant in *Brock* premised that defense on the plaintiff's failure to inform him of her new marital status, name or location for that period.

At the same time, "[h]er whereabouts and status were known to her cousin in Connecticut, an attorney, who represented her in the divorce proceedings." Id., 139. As a result, this court concluded that, in light of "the fact that the defendant made only a limited attempt to locate the plaintiff or his daughter in Florida while he knew that a relative of hers resided in Connecticut, we cannot say that the court erred in concluding that the plaintiff was not guilty of laches." Id., 141. By contrast, the court here found that the plaintiff made considerable effort to contact dozens of friends and family members of the defendant with no success and made repeated trips to Florida in the aim of obtaining her address or telephone number. As the court found, the plaintiff had no means of contacting her despite those efforts.

In light of the foregoing, we conclude as a matter of law that the defendant is guilty of laches in the present case. Her delay of more than one decade in filing her claim for arrearages, during which the plaintiff had no means of contacting her, was inexcusable and prejudiced the plaintiff. As a result, the plaintiff's motion to preclude receipt of further alimony or support should have been granted.

The judgment is reversed and the case is remanded with direction to grant the motion to preclude further alimony or support and render judgment accordingly.

In this opinion the other judges concurred.