******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RALSTON BROWN *v.* STATE FARM FIRE AND
CASUALTY COMPANY
(AC 35347)

Beach, Alvord and Flynn, Js.

*Argued December 4, 2013—officially released May 27, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, S. Richards. J. [motion for summary
judgment]; Bellis, J. [motion for extension of time]; Hon.
William B. Rush, judge trial referee [objection to motion
to strike]; Hon. L. Scott Melville, judge trial referee
[judgment].)

*Ralston Brown*, self-represented, the appellant
(plaintiff), filed a brief.

*Daniel P. Scapellati*, for the appellee (defendant).

*Opinion*

FLYNN, J. In this breach of insurance contract action, the plaintiff, Ralston Brown, claims that the defendant, State Farm Fire and Casualty Company, wrongfully failed to cover the fire loss sustained to his dwelling at 100 Harral Avenue in Bridgeport, which occurred on April 21, 2006. The trial court rendered judgment for the defendant after a trial to the court on the merits. On appeal, the plaintiff claims that: (1) Judge Richards erred in denying the plaintiff's motion for summary judgment; (2) Judge Bellis abused her discretion by granting the defendant's motion for an extension of time to file its opposition to the plaintiff's motion for summary judgment; (3) Judge Rush abused his discretion by sustaining the defendant's objection to the plaintiff's motion to strike the affidavits of certain witnesses in connection with the summary judgment motion; (4) Judge Melville erred in concluding that the plaintiff's post-loss premium payment reinstated his insurance coverage prospectively only;[1] and (5) Judge Melville erred in rendering judgment for the defendant after a trial on the merits, concluding that the homeowner's insurance policy was not in effect on April 21, 2006, the date of the fire. First, we conclude that the plaintiff's claim of error in denying summary judgment is unreviewable. With it fall the plaintiff's two related claims made in connection with his motion for summary judgment. Second, we reject the plaintiff's claim that the defendant waived its right to deny coverage by accepting payment from the defendant after his loss. Finally, we conclude that the plaintiff has failed to show that Judge Melville erred in rendering judgment for the defendant. Accordingly, we affirm the judgment of the trial court.

The following facts, as found by Judge Melville and supported by the record, are relevant to our review. The plaintiff purchased a homeowner's insurance policy from the defendant on September 16, 2004, to be billed on a quarterly basis. The plaintiff purchased a business policy from the defendant on September 26, 2005. At the plaintiff's request, the defendant agreed to bill the plaintiff quarterly on the same date for both policies, rather than on each policy's anniversary date. He did not pay the full amount owed for that quarter.[2]

On February 16, 2006, the plaintiff was billed $729.85 for the quarter beginning in March, 2006, payable on or before April 6, 2006.[3] On March 22, 2006, the plaintiff was sent a cancellation notice indicating that his policies would be cancelled on April 6, 2006, if he failed to pay that amount by that date. The plaintiff did not tender payment prior to April 6, 2006. The plaintiff admitted to finding the cancellation notice in the debris left after the fire.

On April 21, 2006, the plaintiff's dwelling was lost

due to fire. After the fire, and upon discovering a cancellation notice sent from the defendant, dated March 22, 2006, the plaintiff mailed the defendant the missing payment. The defendant credited the plaintiff's account $729.85 on April 22, 2006—the day after the fire. The court found that this payment reinstated the plaintiff's policy, effective that day.

The plaintiff filed an insurance claim with the defendant for the fire loss to his dwelling, which it denied. The plaintiff thereafter filed a one count complaint alleging breach of contract against the defendant. After a bench trial, the court rendered judgment in favor of the defendant. This appeal followed.

I

We first address the plaintiff's claim that the trial court erred by denying his motion for summary judgment. We conclude that this claim is not appropriate for our review because it was not in itself a final judgment for the purpose of appeal and it is not reviewable after judgment was rendered because a full trial rendered the ruling on the motion for summary judgment academic. We further conclude that two other claims raised by the plaintiff connected with the summary judgment motion must fall as well.

A

"Our appellate courts lack jurisdiction to hear an appeal that is not brought from a final judgment. . . . Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Citations omitted; internal quotation marks omitted.) *Lakeside Estates, LLC* v. *Zoning Commission*, 100 Conn. App. 695, 697–98, 919 A.2d 1044 (2007).

"[T]he denial of a motion for summary judgment is not a final judgment and therefore is not ordinarily appealable." *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991); see also *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008); *Denby* v. *Voloshin Cadillac Inc.*, 3 Conn. App. 181, 181–82 n.3, 485 A.2d 1360, cert. dismissed, 196 Conn. 802, 491 A.2d 1105 (1985).

The claim that the denial of a motion for summary judgment was erroneous is also ordinarily not reviewable after a final judgment on the merits has later been rendered. Our Supreme Court has held that "absent exceptional circumstances, a denial of a motion for summary judgment is not appealable where a full trial on the merits produces a verdict against the moving party." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991); see also *Smith* v. *Greenwich*, 278 Conn. 428, 465, 899 A.2d 563 (2006). The rationale for this rule is that a decision based on evidence presented at trial precludes

review of a decision made on less summary judgment evidence. *Gurliacci* v. *Mayer*, supra, 541 n.7.

In the present case, the plaintiff appeals from a denial of summary of judgment, which is not a final judgment. He attempts to do so following a trial on the merits. Any claimed error in the denial of summary judgment "merged into the subsequent decision on the merits." *Gurliacci* v. *Mayer*, supra, 218 Conn. 541 n.7. Furthermore, his claim does not satisfy any of the exceptions recognized under our law. See, e.g., *Pelletier* v. *Sardoni/ Skanska Construction Co.*, 286 Conn. 563, 576–78, 945 A.2d 388 (2008) (exceptional circumstances permit court to review denial of motion for summary judgment because court decided issue as matter of law, which controlled later proceedings). Therefore, the plaintiff's claim that the trial court erred in denying his motion for summary judgment is not reviewable.

B

Having concluded that the denial of the plaintiff's motion for summary judgment is not reviewable, the two other claims he raises relating to summary judgment also must fall with it. Specifically, despite the fact that Practice Book § 17-47 authorizes a trial court, in its discretion, to grant a reasonable continuance to a party opposing summary judgment in order to obtain documentary evidence, the plaintiff nonetheless attempts to appeal from the court's order granting the defendant an extension of time to file its opposition to the plaintiff's motion. The plaintiff also attempts to appeal the court's order denying the plaintiff's motion to strike the affidavits of India Willis and Roseanne Faulker submitted by the defendant in its opposition to the plaintiff's motion for summary judgment.

Both of these claims arose as part of the plaintiff's unreviewable claim regarding the denial of his motion for summary judgment. Furthermore, because the appeal on these issues follows a judgment on the merits, appellate resolution of these claims would be wholly academic. Thus, we conclude that these two claims are subsumed by the plaintiff's unreviewable claim that the court erroneously denied its motion for summary judgment, and we decline to review these claims.

II

The plaintiff next argues that the defendant waived its right to deny coverage for the loss when it accepted payment after the April 21, 2006 fire and then declined to provide coverage retroactive to the date of loss. He contends that the court erred in concluding that the plaintiff's post-loss premium payment operated to reinstate his coverage prospectively only. We disagree.

This claim, one of first impression, presents a question of law, over which our review is plenary. *Fromm* v. *Fromm*, 108 Conn. App. 376, 383, 948 A.2d 328 (2008).

The following language from the plaintiff's insurance contract informs our analysis of this claim.[4] Among the declarations in the insurance policy issued by the defendant to the plaintiff was the proviso: "You agree, by acceptance of this policy, that . . . you will pay premiums when due and comply with the provisions of the policy." The policy further states: "We may cancel this policy only for the reasons stated in this condition. . . . (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect." The cancellation notice sent to the plaintiff on March 22, 2006, with a cancellation date of April 6, 2006, states: "Should you wish to reinstate these policies, please forward your payment immediately. . . . If paid after [the] date and time [of cancellation] you will be informed whether your policies have been reinstated and if so, the exact date and time of reinstatement. There is no coverage between the date and time of cancellation and the date and time of reinstatement."

The policy language previously set forth notwithstanding, the plaintiff maintains that the defendant's post-loss acceptance of his late premium payment obligated it to cover the loss sustained to his dwelling on April 21, 2006. The court concluded otherwise. In its memorandum of decision, the court noted the dearth of Connecticut case law addressing whether late premium payments should be applied retroactively, or whether the late payment merely reinstates coverage prospectively. The trial court determined that the approach taken in a majority of jurisdictions represented the better view, and held that when a late payment is made on a lapsed insurance policy, the payment restores the policy going forward fully. Applying this rule here, the court determined that because the "plaintiff did not pay the $729.85 until April [21], 2006.[5] Consequently, [the plaintiff's] policies were not in force between April 6, 2006, and April 22, [2006].[6] On April 22, 2006, the plaintiff's policies were 'reinstated.' However, that reinstatement was prospective with regard to coverage and did not cover the fire loss which occurred on April 21, 2006." (Footnotes omitted.)

Our state's appellate courts have not had occasion to consider this issue previously. According to the view followed in a majority of jurisdictions,[7] when a lapsed insurance policy is reinstated, "losses suffered between the time of the lapse and the reinstatement are not covered." R. Jerry, Understanding Insurance Law (3d Ed. 2002) § 62B, p. 437.

This rule effectuates an important principle of insurance law: the concept of fortuity. "It is a fundamental requirement in insurance law that the insurer will not pay for a loss unless the loss is 'fortuitous,' meaning that the loss must be accidental in some sense. . . . [L]osses that are certain to occur, or which have already

occurred are not fortuitous." (Footnote omitted.) R. Jerry, supra, § 63, pp. 450–51. This principle explains why a person cannot suffer a loss and then subsequently purchase insurance to cover that loss. It is axiomatic that "a known loss that has already occurred . . . is not uncertain to occur."[8] Id., p. 451.

This reasoning is persuasive to the court. One procures insurance because he might suffer a future loss. A loss that has already occurred is not fortuitous—and is thus not insurable. Without such a rule, one could allow his coverage to lapse by not paying his premiums timely and then, upon suffering a loss, force his insurer to "buy a claim" by quickly making the missed premium payments to reinstate his lapsed coverage retroactively. Such a rule would allow the insured to consciously shift the burden of his known loss from himself onto his insurer, and, ultimately, onto those policy holders who have dutifully paid their premiums on time and maintained continuous insurance coverage. Accordingly, we conclude that when an insurance policy has been cancelled due to nonpayment of premiums, and the insured seeks to reinstate that policy, the insurer is within its rights to reinstate coverage effective only for losses going forward.

Here, pursuant to the insurance policy and cancellation notice sent by the defendant to the plaintiff, the insured was not entitled to coverage for losses sustained to his 100 Harral Avenue dwelling on April 21, 2006. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy."[9] (Internal quotation marks omitted.) *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 199, 901 A.2d 666 (2006). By its terms, the language of the insurance policy and cancellation notice foreclosed coverage during the cancellation period. Furthermore, it would be contrary to the public policy discussed previously to permit the plaintiff to reinstate insurance coverage on his property at a time when he knew that he had already sustained a loss to that property. Therefore, we reject the plaintiff's argument that the defendant waived its right to deny coverage for the plaintiff's loss by its acceptance of the late premium payment.

### III

Finally, the plaintiff claims that Judge Melville erred in finding that the homeowner's policy was not in effect on April 21, 2006, the day of the fire, due to nonpayment of premiums. We are not persuaded.

We begin by setting forth the applicable standard of review. "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It

is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . [F]actual findings of a trial court . . . are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Citation omitted; internal quotation marks omitted.) *Joseph General Contracting, Inc.* v. *Couto*, 144 Conn. App. 241, 249, 72 A.3d 413, cert. granted on other grounds, 310 Conn. 924, 77 A.3d 139 (2013).

The court made the following findings of fact. The plaintiff was billed on a quarterly basis, with the first quarter of the billing year commencing in September. On November 17, 2005, the plaintiff was sent a bill for $765.48 for the second quarter of the policy year, due by December 16, 2005. The plaintiff made a payment on December 16, 2005, of $257.16, some $508.32 less than he owed. The court determined that this was a partial payment for the second quarter of 2005 by adding the amount of the payment ($257.16) and the amount owed on the cancelation notice ($508.32), which sums precisely to $765.48. On December 21, 2005, the plaintiff was sent a cancellation notice informing him that he was required to pay the unpaid balance to avoid the cancellation of his homeowner's policy on January 10, 2006. On January 17, 2006, the plaintiff made a payment of $508.32 to the defendant. With this payment, the plaintiff's coverage was reinstated, but his homeowner's policy was not in force between January 10, 2006, and January 17, 2006.

On February 16, 2006, the plaintiff was billed $729.85 for both policies, payable in advance by March 16, 2006. This covered the third quarter of the policy year, March through May 2006. A cancellation notice was sent on March 22, 2006, explaining that both policies would be cancelled on April 6, 2006, if payment was not remitted before April 6, 2006. At trial, the plaintiff admitted that he failed to pay any part of this bill on or before the March 16, 2006 due date or the April 6, 2006 cancellation date. The court found that, due to nonpayment by the plaintiff, the homeowner's policy was not in effect on April 21, 2006. The plaintiff introduced no evidence that his payment had made prior to the effective date of cancellation on April 6, 2006, or that any payment had been made before the fire occurred on April 21, 2006.

Thus, the court rejected the plaintiff's claim that this payment was made timely.

Our thorough review of the record leads us to conclude that the plaintiff has not shown that the trial court's findings of fact were clearly erroneous. In his well reasoned memorandum of decision, Judge Melville found that the plaintiff failed to pay the plan's premium on or before the cancellation date (April 6, 2006); the defendant was entitled to cancel the policy and deny coverage for the claimed loss on April 21, 2006.

The plaintiff argues that the two policies (homeowner's and business) were "completely separated" for billing purposes; that the defendant misapplied his premium payments; and that had the defendant correctly applied these payments his coverage would not have been cancelled on April 6, 2006. When asked to provide evidence to support his position, the plaintiff could supply only his own testimony; he was unable to provide the court with any documentary evidence in support of his position. The trial court rejected this argument, concluding that the plaintiff "failed to offer any evidence . . . which could establish how the defendant applied his payments," thus failing to meet his burden of proof.

When sitting as the finder of fact, "[i]t is within the province of the trial court . . . to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, 267 Conn. 1, 40, 835 A.2d 998 (2003). Furthermore, although it was not required to do so,[10] the defendant submitted evidence from which the court could reasonably have reached its conclusion contrary to that urged by the plaintiff. Specifically, the defendant placed into evidence a chart showing the plaintiff's history of premium payments and missed payments. This table showed that he was billed $729.85 for both policies on February 16, 2006. Payment was due on March 16, 2006, and when he failed to remit payment timely, his coverage was canceled effective April 6, 2006. An employee of the defendant testified that the bill sent to the plaintiff for the third quarter was for both policies and that had the plaintiff paid the balance before April 6, 2006, he would have been covered for the months of March, April, and May 2006, including the April 21, 2006 loss. Accordingly, we defer to the trial court's assessment of the witnesses and evidence, and conclude that there was sufficient evidence in the record to support the trial court's factual conclusions. We thus reject the plaintiff's claim that the trial court's findings of fact were clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also claims that under the law of agency, the defendant was bound by the supposed representation made by its independent contractor, John Reilly, to the plaintiff that the plaintiff would be billed monthly,

rather than quarterly for his insurance. We decline to decide this issue because its outcome is not dispositive of the resolution of this appeal. Even if Reilly were an actual or apparent agent of the defendant, his supposed oral modification of the insurance contract would not bind the defendant because there was no written agreement by the defendant to alter the terms of the agreement, as required under the insurance policy. The policy states: "A waiver or change of any provision of the policy must be in writing by us to be valid." "Where the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms." (Internal quotation marks omitted.) *Auto Glass Express, Inc.* v. *Hanover Ins. Co.*, 293 Conn. 218, 226, 975 A.2d 1266 (2009).

[2] The plaintiff made a partial payment for the quarter of $257.16 in person at the defendant's office on September 16, 2005.

[3] The plaintiff was billed quarterly, with the first quarter beginning in September and running through November.

[4] Connecticut has adopted a statutory form of standard fire insurance policy. General Statutes § 38a-307. It provides in pertinent part that: "[T]he standard form of fire insurance policy of the state of Connecticut . . . shall be as follows . . . .

"Cancellation of policy. . . . This policy may be cancelled at any time by this Company by giving to the insured and any third party designated pursuant to [General Statutes §] 38a-323a, a thirty days' written notice of cancellation accompanied by the reason therefor with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. Where cancellation is for nonpayment of premium at least ten days' written notice of cancellation accompanied by the reason therefor shall be given." General Statutes § 38a-307. The policy that the defendant issued was in conformance with this statutory standard as to cancellation.

[5] The defendant conceded at trial that he did not make the payment of $729.85 until April 21, 2006, after the fire. The memorandum of decision transposed April 21, 2006, to April 12, 2006, in error.

[6] The memorandum of decision erroneously referred to April 22, 2011, when the court was obviously referring to April 22, 2006.

[7] R. Jerry, Understanding Insurance Law (3d Ed. 2002) § 62B, p. 437 (stating that most courts treat reinstated insurance policy as continuing lapsed policy, rather than creating new contract for insurance).

[8] Furthermore, there is authority for the proposition that "when an insurer accepts payment for a premium-lapsed policy with knowledge that a loss has occurred during the period of lapse, the insurer may . . . apply the premium from the date received forward [only if the insurer] clearly conveyed to the insured [its intent to do so] before the premium [payment] is accepted." 44A Am. Jur. 2d 93, Insurance § 1612, n.3 (2003); see also; see also *O'Connor* v. *Metropolitan Life Ins. Co.*, 121 Conn. 599, 604–11, 186 A. 618 (1936). In the present case, the cancellation notice sent to the plaintiff by the defendant gave him the option of reinstating his lapsed coverage, but provided explicitly that "[t]here is no coverage between the date and time of cancellation and the date and time of reinstatement."

[9] The interpretation of an insurance contract presents a question of law, over which our review is plenary. *Nationwide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 537, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004).

[10] It is elementary that in a civil action, "the general burden of proof rests upon the plaintiff . . . ." (Internal quotation marks omitted.) *Suresky* v. *Sweedler*, 140 Conn. App. 800, 807, 60 A.3d 358 (2013).